IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

DEANNA SWAIN, As Executor of the )
Estate of Dustin Walker, Deceased, )
　　　　　　　　　　　　　　　　 )
　　　　Plaintiff, )
　　　　　　　　　　　　　　　　 )
vs. )　　Case NO.:　16-CV-1183
　　　　　　　　　　　　　　　　 )
SALVADOR GODINEZ , Director of the )
Illinois Department of Corrections, )
CHARLES PECK, Deputy Director of )
IDOC, Southern District, )
JACQUELINE LASHBROOK, Acting )
Warden of Pinckneyville Correctional )
Center, all individual capacities, )
WEXFORD HEALTH SOURCES, INC., )
NANCY KNOPE, in her individual and )
official capacity, )
BRITTANY FORTAG, CPN in her )
individual and official capacity, )
JENNIFER DAUGHTRY, in her )
individual and official capacity, )
STACIE MURRAY, QMHP in her )
individual and official capacity, )
ROSE LOOS, QMHP in her )
individual and official capacity, )
UNKNOWN AND UNNAMED )
OFFICERS at Pinckneyville Correctional, )
All in their Individual Capacities, )
　　　　　　　　　　　　　　　　 )
　　　　Defendants. )

**<u>COMPLAINT</u>**

COMES NOW, Deanna Swain as the Executor of Estate of Dustin Walker, Deceased, by and through Jarrod P. Beasley of Kuehn, Beasley, and Young, P.C., and for her Complaint against Defendants states as follows:

## JURISDICTION AND VENUE

1. This action arises under the United States Constitution and the Civil Rights Act of 1871 (42 U.S.C. Section 1983). This court has jurisdiction under and by virtue of 28 U.S.C. Section 1343 and 1331.

2. Venue is founded in this judicial court upon 28 U.S.C Section 1391.

## PARTIES

3. At all times herein mentioned, Plaintiff, DUSTIN WALKER, had been a citizen of the United States and had resided in Madison County, IL, which is within the jurisdiction of this court.

4. Plaintiff DEANNA SWAIN is the only appointed Executor of the Estate of Dustin Walker.

5. Beginning in 2012, Plaintiff was incarcerated at Pinckneyville Correctional Center.

6. Pinckneyville Correctional Center is an Illinois Department of Corrections ("IDOC") Facility.

7. At all times herein mentioned, Defendant SALVADOR GODINEZ was employed by the Illinois Department of Corrections ("IDOC") as its Director,

and was acting under color of state law and as the employee, agent, or representative of IDOC. In his capacity as Director GODINEZ oversees all IDOC facilities, including Pinckneyville Correctional Center and GODINEZ is additionally being sued in his individual capacity.

8.  At all times herein mentioned, Defendant CHARLES PECK was employed by IDOC as Deputy Director of the Southern District, and was acting under color of state law and as the employee, agent, or representative of IDOC. Pinckneyville Correctional Center is located within PECK's jurisdiction. PECK is additionally being sued in his individual capacity.

9.  At all times herein mentioned, Defendant JACQUELINE LASHBROOK was employed by IDOC as Acting Warden of Pinckneyville Correctional Center, and was acting under color of state law and as the employee, agent, or representative of IDOC. LASHBROOK is additionally being sued in her individual capacity.

10. At all times herein mentioned, there were an unknown number of UNKNOWN AND UNNAMED DEFENDANTS working as correction officers at Pinckneyville Correctional Center who were employed by IDOC and were acting under color of state law and as the employees, agents, or representatives of IDOC. These defendants are additionally being sued in their

individual capacities. Once Plaintiffs identify them, they will seek leave to amend the complaint to add them as named Defendants.

## FACTUAL ALLEGATIONS

11. That Plaintiff's decedent, Walker ("Decedent") was a detainee in the custody, control and care of Defendants at the Pinckneyville Correctional Center between early 2012 and December 1, 2014.

12. That all times relevant hereto, Defendants Godinez, Peck, and Lashbrook, supervised and/or controlled its employees and detainees.

13. That all times relevant hereto, Defendants had a special relationship with Decedent arising from the fact that Defendants had custody and care of Decedent under circumstances which deprived him of his normal opportunities for protection.

14. That at all times relevant hereto, Decedent had serious medical needs and/or was at substantial risk of suicide or self-harm and Defendants knew of such serious medical needs and/or substantial risk of suicide or self-harm. Decedent had been previously assessed at Pinckneyville Correctional Center and Defendants knew that he had a documented history of psychological problems, including but not limited to past expressions of suicidal thoughts, depression, low mood and depression.

4

15. In Spring of 2012, Decedent was diagnosed as schizophrenic. He was placed on an antipsychotic, Risperdal, and was cleared for general population. Defendant discontinued his medication and his Axis diagnosis was changed to Polysubstance Abuse.

16. Between November 2012 and January 2013, Decedent was reporting psychotic symptoms such as "hearing voices" and was referred to a psychiatrist who placed him on crisis watch. Decedent kept asking to be placed back on anti-psychotic medicine.

17. Decedent reported he had been thinking of harming himself around the end of January 2012.  He was diagnosed with "Mood disorder secondary to head injury as child" and defendants put him on Tegretol and also restarted Risperdal for anxiety.

18. On or about January 2nd, 2013, Decedent was sent back to general population, but complaints of depression continued.

19. On or about January 24th, 2013, Decedent stated he needed his medications adjusted.

20. Between March 2013 and August 2013, Decedent was in and out of Segregation and was refusing his medications. His diagnosis was changed to Schizophrenia and Antisocial Personality Disorder and defendants adjusted and changed his medication.

21. Around the end of September 2013, Decedent asked to speak to the Crisis Team stating he was suicidal along with having problems with his cell mate.

22. Around the end of January 2014, Decedent was put back in Segregation and had shown someone the scar on his wrist noted to be a "suicidal gesture" and talked about harming himself.

23. In May 2014, Decedent was put back on Crisis Watch where medications were changed again, but he was still hearing voices. Around mid-October, Decedent reported the voices told him to harm himself.  However, the notes taken by defendants state to "discontinue 30 min. watch."

24. During the beginning of November 2014, Decedent stated he is going to hang himself with a sheet. Security found the Decedent standing in his cell with a sheet around his neck.  He did not die.

25. Days later, defendants discontinued crisis watch.  However, the Decedent continued to report feeling suicidal, and did not want to return to House 5.

26. Around the middle of November 2014, Decedent was reported banging his head on the cell wall and was unstable so he was apparently put back on 30-minute watch.

27. On or around November 22nd, 2014, Decedent stated he would kill himself if he was sent back to House 5. He remained on 30-minute watch status.

28. Towards the end of November 2014, Decedent reported feeling suicidal and wanted to talk to someone. He was put on crisis watch and was trying to hide his medications. Defendants thought his behavior was manipulative and he was not really in distress and that he was taking his medication.

29. During this entire period of time, plaintiff was treating with the named defendants employed by Defendant Wexford.

30. On November 30th, 2014, Defendants discontinued Decedent's crisis watch. Later that day, Decedent was found hanging in his cell.

31. The autopsy showed no evidence of medication in the Decedent's system.

32. That the Defendant's knew or should have known the Decedent was not taking his medication.

33. That there exists a procedure for involuntarily medicating detainees when the refusal to take medication might pose a risk of harm to others or himself.

34. That Defendant's never sought permission to involuntary medicate the Decedent despite their knowledge of his suicidal ideations and his refusal to take his prescribed and necessary medications due to his mental state.

## COUNT I

**Violation of Civil Rights (42 U.S.C. § 1983) Against Defendants GODINEZ, Peck, Lashbrook, and Unknown and Unnamed Officers**

35. Plaintiff repleads, realleges, and incorporates by reference all the allegations contained in paragraphs 1 through 34.

7

36. Plaintiff brings Count I of this cause of action against Defendants pursuant to 42 U.S.C § 1983 for damages for Defendants' deprivation of Decedent's constitutionally protected rights by reason of Defendant's violation of Decedents substantive and due process rights pursuant to the Eighth and Fourteenth Amendments of the Constitution of the United States of America.

37. That Defendant Godinez owned, maintained, and operated the Pinckneyville Correctional Center for the purpose of housing detainees, and as such, was acting under the color of state law.

38. The Defendant Peck possessed policymaking authority at the Pinckneyville Correctional Center, including but not limited to the authority to furnish suitable rooms, accommodations and equipment and otherwise provided for the care and safety of those detained at the Pinckneyville Correctional Center. At all times relevant hereto, Defendant Peck was acting under the color of state law.

39. At all times relevant hereto, Defendant Lashbrook possessed supervisory and policymaking authority for the Pinckneyville Correctional Center, including but not limited to the authority to hire, fire, train, supervise and discipline employees of the Pinckneyville Correctional Center and to create and enforce policies and procedures to provide for the safety of the detained. At all times relevant hereto, Defendant Lashbrook was acting under the color of state law.

8

40. Decedent had a clearly established constitutional right to have his serious medical needs addressed and to be protected from self-harm.

41. Defendants, and each of them, knew of the Decedent's serious medical needs, including his serious, imminent and substantial risk of self-harm and suicide, and his need for screening, monitoring and assistance, but willfully and recklessly failed to respond reasonably to these known risks and needs. Defendants, acting alone and in concert, were deliberately indifferent to Decedent's serious medical needs and substantial risk of harm in that Defendants:

   a. failed to provide necessary treatment and/or therapy for Decedent's condition including depression and substantial risk of suicide;
   b. failed to investigate Decedent's known depressive condition and/or substantial risk of suicide enough to make an informed judgement about his medical needs;
   c. made medical decisions about Decedent's treatment and/or therapy based on non-medical factors, such as budgetary constraints and lack of staff;
   d. delayed and/or interfered with Decedents access to treatment and/or therapy for his mental conditions and substantial risk of suicide;
   e. failed to take reasonable measures to abate the known risk of Decedent's suicide;
   f. directed, caused and allowed Decedent to be housed in and remain unmonitored and unsupervised in a cell which was unsafe and contained dangerous items, including bedsheets and railing which Defendants knew could be used by a detainee to hang himself;
   g. hired a private medical contractor to provide medical services and failed to properly vet or supervise them in their work;
   h. failed to place Decedent on suicide watch or adequately monitor his condition and behavior; and/or
   i. otherwise intentionally or recklessly disregarded Decedent's right to adequate medical care and protection from self-harm.

9

42. Further, that while Decedent was under the custody, care and control of the Pinckneyville Correctional Center, Defendants Godinez, Peck, Lashbrook, and Unknown and Unnamed Officers, having supervisory capacities and policymaking authority, maintained unconstitutional policies and had unconstitutional procedures and/or customs, practices and usages that were so widespread as to constitute the policy of the Pinckneyville Correctional Center which they knew place detainees' at risk for self-harm, in that Defendants:

   a. failed to train correctional center staff in suicide prevention, identification and monitoring of at-risk detainees;
   b. caused detainees to be housed in unsafe cells and in unsafe conditions without adequate monitoring;
   c. maintained inadequate suicide prevention, intake and monitoring policies and procedures which failed to identify and/or monitor at-risk detainees;
   d. maintained an inadequate monitoring system of detainees;
   e. failed to enforce intake, monitoring and other suicide prevention policies and procedures, and caused, permitted and allowed a custom practice of continued and persistent deviation from those policies and procedures;
   f. employed, directly and/or by contract, poorly trained and unqualified persons to evaluate and provide care and monitoring to detainees for serious medical needs, including suicide risk; and/or
   g. were otherwise deliberately indifferent to or tacitly authorized acts of their subordinates that violated at-risk detainees and Decedent's constitutional rights.

43. That as directed and proximate result of Defendants' constitutional violations set forth above, and as a direct and proximate result of the Defendants' unconstitutional policies, customs and procedures, combining, concurring and contributing. Decedent's serious medical needs and known and obvious risk of self-harm was ignored, unmonitored, untreated and/or unidentified, and

Decedent was permitted to remain in his cell with dangerous items which enabled him to hang himself and commit suicide.

44. Defendants' constitutional violations and Defendants' unconstitutional policies, customs and procedures, combining, concurring and contributing, were deliberately indifferent to Decedent's known serious medical needs and substantial risk of suicide, and deprived him of his right to be free from punishment and to due process of the law as guaranteed by the Eighth and Fourteenth Amendments of the United States Constitution.

45. As a direct and proximate result of Defendants' constitutional violations, and as a direct and proximate result of Defendants' unconstitutional policies, customs and procedures, combining, concurring and contributing, Decedent died on November 30, 2014.

46. As a direct and proximate result of Defendants' constitutional violations and Defendants' unconstitutional policies, customs and procedures, combining, concurring and contributing, Decedent's mental condition deteriorated and Decedent endured conscious pain and suffering from the time he was detained until his death.

47. As a direct and proximate result of Defendants' constitutional violations and Defendants' unconstitutional policies, customs and procedures, combining, concurring and contributing, Decedent and Decedent's heirs have suffered

pecuniary losses, including but not limited to the costs of Decedent's medical care and expenses associated with Decedent's funeral.

48. As a direct and proximate result of Defendants' constitutional violations and Defendants' unconstitutional policies, customs and procedures, combining, concurring and contributing, Decedent's heirs were caused to suffer loss of services, companionship, comfort, instruction, guidance, counsel and support because of Decedent's death.

49. Further, the constitutional violations of Defendants, and each of them, as described above, were outrageous because of their conscious disregard and reckless indifference to the rights of the Decedent, thereby warranting an award of punitive and exemplary damages against each individually named Defendant.

WHEREFORE, Plaintiff prays the Court enter judgement on Count I in favor of Plaintiff and against Defendants, awarding compensatory and non-economic damages in a reasonable amount to be determined by the jury; punitive and exemplary damages against Defendants Godinez, Peck, Lashbrook and unknown and unnamed officers in their individual capacities in an amount sufficient to punish and deter Defendants and others from like conduct; reasonable attorneys' fees and costs incurred in this action pursuant to 42 U.S.C. § 1988; and for such further and other relief as the Court deems just and proper, together with costs and interests.

## COUNT II

**Violation of Civil Rights (42 U.S.C. § 1983) Against Defendants Knope, Fortag, Daugherty, Murray and Loos**

50. Plaintiff repleads, realleges, and incorporates by reference all the allegations contained in paragraphs 1 through 49.

51. Plaintiff brings Count II of this cause of action against Defendants pursuant to 42 U.S.C. § 1983 for damages for Defendants' deprivation of Decedent's constitutionally protected rights by reason of Defendants' violation of Decedent's substantive and due proves rights pursuant to the Eighth and Fourteenth Amendments of the Constitution of the United States of America.

52. At all times relevant hereto, Defendants Knope, Fortag, Daugherty, Murray and Loos, were engaged in the business for profit of providing medical and psychological services to detainees and inmates of the Pinckneyville Correctional Center, including initial and continuing suicide risk evaluation, and had specifically contracted with Defendant Pinckneyville Correctional Center to provide such services, and as such, were acting under the color of state law.

53. At all times relevant hereto, while the Decedent was under the custody, care and control of the Pinckneyville Correctional Center, Defendants committed one or more of the following acts of deliberate indifference and conscious disregard of Decedent's constitutional rights:

a. had in place policies and procedures which were not reasonably calculated to determine whether detainees at Pinckneyville Correctional Center were in need of serious medical care or at substantial risk of suicide;

b. had in place policies and procedures which deprived detainees of adequate and timely access to necessary medical care;

c. failed to place plaintiff on suicide or high risk watch;

d. failed to ensure plaintiff took his required medicine;

e. noted that they referred plaintiff to a psychiatrist, but never actually did refer plaintiff;

f. failed to train and supervise its employees and agents to adequately assess detainees' serious medical need and/or risk of suicide.

g. assigned poorly trained and unqualified personnel to evaluate and provide care to detainees; and/or

h. were otherwise deliberately indifferent to or tacitly authorized acts of their employees, agents and servants that violated at-risk detainees' and Decedent's constitutional rights.

54. That as a direct and proximate result of Defendants' constitutional violations set forth above, and as a direct and proximate result of Defendants' unconstitutional policies, customs and procedures, combining, concurring and contributing, Decedent's serious medical needs and known risk of self-harm was ignored, unmonitored, untreated and/or unidentified, and Decedent was permitted to remain in his cell with dangerous items which enabled him to hang himself and commit suicide.

55. Defendants' constitutional violations and Defendants' unconstitutional policies, customs and procedures, combining, concurring and contributing, were deliberately indifferent to Decedent's known serious medical needs and substantial risk of suicide, and deprived him of his right to be free from

14

punishment and to due process of law as guaranteed by the Eighth and Fourteenth Amendments of the United States Constitution.

56. As a direct and proximate result of Defendants' constitutional violations, and as a direct and proximate result of Defendants' unconstitutional policies, customs and procedures, combing, concurring and contributing, Decedent died on November 30th, 2014.

57. As a direct and proximate result of Defendants' constitutional violations and Defendants' unconstitutional polices, customs and procedures, combining, concurring and contributing, Decedent's mental condition deteriorated and Decent endured conscious pain and suffering from the time he was detained until his death.

58. As a direct and proximate result of Defendants' constitutional violations and Defendants' unconstitutional policies, customs and procedures, combining, concurring and contributing, Decedent and Decedent's heirs have suffered pecuniary losses, including but not limited to the costs of Decedent's medical care and expenses associated with Decedent's funeral.

59. As a direct and proximate result of Defendants' constitutional violations and Defendants' unconstitutional policies, customs and procedures, combining, concurring and contributing, Decedent's beneficiaries were caused to suffer

loss of services, companionship, comfort, instruction, guidance, counsel and support because of Decedent's death.

60. Further, the constitutional violations of Defendants, and each of them, as described above, were outrageous because of their conscious disregard and reckless indifference to the rights of the Decedent, thereby warranting an award of punitive and exemplary damages against Defendants.

WHEREFORE, Plaintiff prays the Court enter judgement on Count II in favor of Plaintiff and against Defendants, awarding compensatory and non-economic damages in a reasonable amount to be determined by the jury; punitive and exemplary damages against Defendants in an amount sufficient to punish and deter Defendants and other from like conduct; reasonable attorneys' fees and costs incurred in this action pursuant to 42 U.S.C. § 1988; and for such further and other relief as the Court deems just and proper, together with costs and interests.

**COUNT III – Violation of 42 USC § 1983 v. Wexford Health Sources, Inc.**

61. That Plaintiff incorporates paragraphs 1-60 as if fully set forth herein.

62. That Wexford Health Sources, Inc., had a duty, through its employees, to maintain the plaintiff and to furnish all necessary medical aid to prisoners of Pinckneyville Correctional Center.

63. At all times relevant hereto, Defendant Wexford was engaged in the business for profit of providing medical and psychological services to detainees and

inmates of the Pinckneyville Correctional Center, including initial and continuing suicide risk evaluation, and had specifically contracted with Defendant Pinckneyville Correctional Center to provide such services, and as such, was acting under the color of state law.

64. That Defendants Knope, Fortag, Daugherty, Murray and Loos were employees of Defendant Wexford.

65. At all times relevant hereto, while the Decedent was under the custody, care and control of the Pinckneyville Correctional Center, Defendant committed, through its agents, employees and representatives, one or more of the following acts of deliberate indifference and conscious disregard of Decedent's constitutional rights:

 a. had in place policies and procedures which were not reasonably calculated to determine whether detainees at Pinckneyville Correctional Center were in need of serious medical care or at substantial risk of suicide;

 b. had in place policies and procedures which deprived detainees of adequate and timely access to necessary medical care;

 c. failed to train and supervise its employees and agents to adequately assess detainees' serious medical need and/or risk of suicide.

 d. had employees who failed to recognize the severity of the condition of plaintiff and removed him from suicide watch the day he committed suicide;

 e. assigned poorly trained and unqualified personnel to evaluate and provide care to detainees; and/or

 f. were otherwise deliberately indifferent to or tacitly authorized acts of their employees, agents and servants that violated at-risk detainees' and Decedent's constitutional rights.

66. That as a direct and proximate result of Defendant's constitutional violations set forth above, and as a direct and proximate result of Defendant's unconstitutional policies, customs and procedures, combining, concurring and contributing, Decedent's serious medical needs and known risk of self-harm was ignored, unmonitored, untreated and/or unidentified, and Decedent was permitted to remain in his cell with dangerous items which enabled him to hang himself and commit suicide.

67. Defendant's constitutional violations and Defendant's unconstitutional policies, customs and procedures, combining, concurring and contributing, were deliberately indifferent to Decedent's known serious medical needs and substantial risk of suicide, and deprived him of his right to be free from punishment and to due process of law as guaranteed by the Eighth and Fourteenth Amendments of the United States Constitution.

68. As a direct and proximate result of Defendant's constitutional violations, and as a direct and proximate result of Defendant's unconstitutional policies, customs and procedures, combing, concurring and contributing, Decedent died on November 30th, 2014.

69. As a direct and proximate result of Defendant's constitutional violations and Defendant's unconstitutional polices, customs and procedures, combining, concurring and contributing, Decedent's mental condition deteriorated and

Decent endured conscious pain and suffering from the time he was detained

until his death.

70. As a direct and proximate result of Defendant's constitutional violations and

Defendant's unconstitutional policies, customs and procedures, combining,

concurring and contributing, Decedent and Decedent's heirs have suffered

pecuniary losses, including but not limited to the costs of Decedent's medical

care and expenses associated with Decedent's funeral.

71. As a direct and proximate result of Defendant's constitutional violations and

Defendant's unconstitutional policies, customs and procedures, combining,

concurring and contributing, Decedent's beneficiaries were caused to suffer

loss of services, companionship, comfort, instruction, guidance, counsel and

support because of Decedent's death.

72. Further, the constitutional violations of Defendant, and each of them, as

described above, were outrageous because of their conscious disregard and

reckless indifference to the rights of the Decedent, thereby warranting an

award of punitive and exemplary damages against Defendant.

WHEREFORE, Plaintiff prays the Court enter judgement on Count III in favor of

Plaintiff and against Defendant, awarding compensatory and non-economic damages in

a reasonable amount to be determined by the jury; punitive and exemplary damages

against Defendant in an amount sufficient to punish and deter Defendant and other

from like conduct; reasonable attorneys' fees and costs incurred in this action pursuant

to 42 U.S.C. § 1988; and for such further and other relief as the Court deems just and

proper, together with costs and interests.

Respectfully Submitted,

/s Jarrod P. Beasley
Jarrod P. Beasley #6274536
Attorney for Plaintiff
Kuehn, Beasley & Young, P.C.
23 S. First St.
Belleville, IL 62220
Phone:  618.277.7260
Fax:  618.277.7718